**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**TAMMY S. THOMAS,**

     **Plaintiff,**

                              **Case No. 2:18-cv-108**

**v.**                           **Judge Algenon L. Marbley**

                              **Chief Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF
SOCIAL SECURITY,**

     **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Tammy S. Thomas, brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Social Security disability insurance benefits. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 8), the Commissioner's Memorandum in Opposition (ECF No. 13), and the administrative record (ECF No. 7). No reply has been filed. For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.    BACKGROUND

Plaintiff filed her first application for disability insurance benefits on February 25, 2010, alleging that she had been disabled since June 30, 2008. (R. at 157.) Plaintiff's application was denied initially and upon reconsideration. (*Id.*) Plaintiff sought a *de novo* hearing before an administrative law judge. (*Id.*) Administrative Law Judge ("ALJ") K. Michael Foley held a

hearing on June 18, 2012, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 157, 169.)  On August 28, 2012, ALJ Foley issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 157–69.)  Plaintiff did not appeal this decision.

Plaintiff filed her second application (the instant application) for disability insurance benefits in February 2014, alleging that she has been disabled since August 29, 2012.  (R. at 288–89.)  Plaintiff's second application was denied initially and upon reconsideration.  (R. at 174–200.)  Plaintiff sought a *de novo* hearing before an administrative law judge.  (R. at 247–48.)  ALJ Jason Earnhart held a hearing on April 15, 2016, at which Plaintiff, who was represented by counsel, appeared and testified.  (R. at 121–53.)  On May 10, 2016, ALJ Earnhart issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 204–20.)  On August 30, 2017, the Appeals Council granted Plaintiff's request for a review of the ALJ's decision.  (R. at 284–87.)  On December 12, 2017, the Appeals Council concluded that Plaintiff was not disabled, which became the Commissioner's final decision.  (R. at 1–9.)  Plaintiff then timely commenced the instant action.

## II.      HEARING TESTIMONY[1]

### A.      Plaintiff's Testimony

Plaintiff testified at the second administrative hearing on April 15, 2016, that she was five feet, eight inches tall, and weighed 189 pounds.  (R. at 125.)  Plaintiff has her driver's license and drives to the doctor and to the store.  (R. at 126.)  Plaintiff testified that she had some falls in 2013 and 2014 and as recently as two weeks before the hearing in 2016.  (R. at 127–28.)

---

[1] The Court limits its analysis of the evidence and the administrative decision to the issues raised in the Statement of Errors.

According to Plaintiff, she has some stability issues, particularly with her weaker left leg.  (R. at 134.)  She described difficulty with her legs, that they go to sleep and have a tingling feeling.  (R. at 137.)

Plaintiff testified that she was frustrated when working her home health care job because of having "spells" and not being able to complete her job.  (R. at 134.)

Plaintiff testified that, prior to June 30, 2104, she experienced one to two migraines a month that lasted three to four days during which she would self-medicate, avoid driving, and have visual disturbances.  (R. at 137–38.)  If her medication did not work, she would go to the hospital and often received a shot.  (R. at 138.)

According to Plaintiff, she passed out a couple of times a week in 2013 and 2014 as a result of her syncope.  (R. at 139–40.)

After surgery in 2013 and up to June 2014, Plaintiff experienced numbness in her legs and lower back, testifying that she could walk a half of a block before having to stop and rest.  (R. at 140.)  Plaintiff testified that she used a cane but there was no prescription for it; it was just suggested she use it.  (R. at 141–42.)  She did not bring her cane to the hearing.  (R. at 142.)

At the time of the hearing, Plaintiff rated her pain level at a nine out of ten but stated she did not take her pain medication because it makes her sleepy.  (R. at 143–44.)  According to Plaintiff, the heaviest thing she can lift comfortably is a gallon of milk.  (R. at 144–45.)

## B.     Vocational Expert Testimony

Richard Astrike testified as a vocational expert ("VE") at the April 15, 2016, administrative hearing.  (R. at 146–52.)  The VE testified that Plaintiff's past jobs include assembler, home health aide, press operator, forklift operator, and stocker.  (R. at 146–50.)  The VE testified that a hypothetical individual of Plaintiff's age, education, experience, and

vocational profile who retained the residual functional capacity ("RFC")[2] that ALJ Earnhart ultimately assessed could perform the past work of only the press operator.  (R. at 150.) However, the VE further testified that the hypothetical individual could perform other jobs such as garment sorter (approximately 350 jobs locally and 250,000 jobs nationally); inspector (approximately 350 jobs locally and 120,000 jobs nationally); packager (approximately 350 jobs locally and 180,000 jobs nationally).  (R. at 150–51.)

### III.  MEDICAL RECORDS[3]

**A.  Physical Impairments**

**1.  Genesis HealthCare System**

On June 10, 2013, Plaintiff presented to the emergency department, reporting that she has little recollection of a syncopal episode, but that her daughters report that Plaintiff was walking from the bedroom when she passed out.  (R. at 382.)  Plaintiff believed that she may have struck her head because she had pain to the back of her head with a pain level of ten out of ten.  (*Id.*) Upon neurological examination, Plaintiff was positive for syncope and headaches but negative for weakness, numbness, and all other systems reviewed.  (*Id.*)

A MRI of Plaintiff's lumbar spine dated July 18, 2013, revealed the following:

Findings:  The study assumes the presence of 5 lumbar-type, non-rib bearing vertebral bodies.  The lumbar vertebral bodies are normal in height and marrow signal.  There is similar grade 1 retrolisthesis of L2 relative to L3 and L3 relative to L4.  No evidence of acute fracture.  The conus terminates appropriately.  Review of the paraspinal soft tissues demonstrates no specific abnormality.  The included lower thoracic intervertebral disk spaces through the L1-2 level show no focal disk herniation, significant central spinal canal, or neural foraminal narrowing.

---

[2] A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his or her] limitations."  20 C.F.R. § 404.1545(a)(1).

[3] Again, the Court limits its discussion of the evidence to issues raised in the Statement of Errors and further refers to the evidence of record in its analysis below.

L2-3: There is a diffuse disk bulge with superimposed broad-based right paracentral disk protrusion/extrusion, relatively similar in appearance to the previous study. This slightly indents the right ventral lateral aspect of the thecal sac, without significantly narrowing the central spinal canal. There is mild narrowing of the right lateral recess. There is mild bilateral inferior neural toraminal narrowing. The disk protrusion extends approximately 7 mm below the disk space, similar to the prior study.

L3-4: There is a mild disk bulge, slightly flattening the ventral thecalsac. A small posterior annular tear is noted. No focal disk herniation or significant central spinal canal stenosis. Mild degenerative facet changes. There is similar mild inferior neural foraminal narrowing on the right. No significant left neural foraminal narrowing.

L4-5: Minimal disk bulge without focal disk herniation or significant central spinal canal narrowing. There is similar mild bilateral neural foraminal narrowing inferiorly. Mild degenerative facet changes.

L5-S1: No focal disk herniation, significant central spinal canal, or neural foraminal narrowing. Mild degenerative facet changes.

(R. at 403.)

## 2. Daryl R. Sybert, D.O. and Emily J. Yu, M.D.

On July 30, 2013, Plaintiff presented to Daryl R. Sybert, D.O., an orthopedic spine surgeon, and Emily J. Yu, M.D., a physical medicine and rehabilitation physician, for her evaluation of complaints of lower back pain radiating to bilateral lower extremities. (R. at 361.) They noted that Plaintiff reported such pain beginning in April 2012 with progressively worsening pain. (*Id*.) Drs. Sybert and Yu noted the following:

Review of systems is significant for intolerance to extremes of heat and cold, sweating heavily at nighttime, lightheadedness, dizziness, balance issues, chest pain, palpitations, shortness of breath, ankle swelling, appetite change, nausea, constipation, headaches, depression, anxiety and nervous and trouble sleeping. Otherwise her whole intake questionnaire is completely negative and I have reviewed it that with her and that included a 14 system review.

(R. at 362.) Upon physical examination, Drs. Sybert and Yu noted that her range of motion of the lumbar spine reflected flexion is 40 degrees, extension of 10 degrees, and lateral bending is

10 degrees all of that with axial lumbar pain.  (*Id.*)  Plaintiff had full range of motion of the cervical spine with mild end of range of motion neck discomfort as well as moderate bilateral lumbar paraspinal spasm and tenderness.  (*Id.*)  There was posterior superior iliac spine ("PSIS") tenderness, but no piriformis tenderness or upper quadrant tenderness.  (*Id.*)  Drs. Sybert and Yu further noted that Plaintiff's shoulder and hip range of motion were within normal limits with no pain or instability on provocation bilaterally.  (*Id.*)  Drs. Sybert and Yu went on to note that Plaintiff has had adequate trial of conservative measures and that a MRI and x-rays showed multilevel degenerative changes with instability and disc degeneration and retrolisthesis at L2-L3 level and to a lesser degree at the L3-L4 level.  (*Id.*)  Drs. Sybert and Yu noted that Plaintiff could no longer tolerate her symptoms and Dr. Sybert educated Plaintiff about the procedure of lumbar laminectomy, fixation, and fusion L2-L3 and L3-L4 levels and Plaintiff indicated she wanted to pursue this procedure.  (R. at 362–63.)

On August 21, 2013, Plaintiff underwent a lumbar laminectomy, fixation, and fusion L2-L3 and L3-L4 levels.  (R. at 360.)  On August 29, 2013, Plaintiff reported "pretty significant back spasms."  (*Id.*)  While her leg pain was better than it was before surgery, it was still present.  (*Id.*)

On July 17, 2014, Plaintiff presented to Dr. Sybert for an evaluation following her lumbar fusion on August 21, 2013, for lumbar spinal stenosis, spondylolisthesis, and spondylosis.  (R. at 633.) [4]  Dr. Sybert noted Plaintiff's back pain was "well-managed," but that she had recurrent left

---

[4] In her account of the factual background, Plaintiff also refers to additional symptoms in July 2013 and a fall in May 2014.  (ECF No. 8 at 3–4.)  Plaintiff, however, provides no citations to the record (*see*, *e.g.*, *id.* at 4 ("*PageID No.* [left blank by Plaintiff]")) and it is not immediately apparent to the undersigned where this information appears in the voluminous record.  *See Stankoski v. Comm'r of Social Sec.*, No. 2:11-cv-627, 2012 WL 3780333, at *3 (S.D. Ohio Aug. 31, 2012) ("[I]n the context of Social Security cases, it is a claimant's duty to highlight the portions of the record on which his or her argument is based.") (citations omitted); *Przytulski v.*

lower extremity radiculopathy, which persisted through physical therapy, medical care, and management. (*Id.*) Dr. Sybert assessed protracted course of left lower extremity radiculopathy and gave Plaintiff an intramuscular injection of steroid at her request. (*Id.*) Dr. Sybert ordered a MRI study for further clarification of the ongoing etiology of her radiculopathy, which had been refractory to many months of conservative care and treatment, explaining that the MRI was needed to develop a care plan moving forward. (*Id.*)

### 3. Neurological Associates of SE Ohio, Inc.

On February 14, 2013, Plaintiff presented to Carrie A. Schilling, M.S.N., CNP, for a follow up appointment. (R. at 439.) Nurse Schilling noted that Plaintiff reported that her headaches were very severe and that Plaintiff went to the emergency room on two different occasions. (*Id.*) Plaintiff reported that during the last episode she passed out at work with severe pain. (*Id.*) However, Plaintiff further reported that since starting Atenolol/Chlorothiazide, her headaches have been much better and she does not experience the pounding sensation she previously had. (*Id.*) Nurse Schilling recommended that Plaintiff return to the clinic in six months or sooner if additional issues arose. (*Id.*)

### 4. Arrowhead Clinic

On October 1, 2013, Plaintiff presented for follow up, stating that her syncope had "gotten better" and it was noted that she had no further syncopal episodes. (R. at 379.)[5]

---

*Astrue*, No. 1:11-cv-1518, 2012 WL 2025299, at *6 (N.D. Ohio June 5, 2012) ("The Court will not cull through the record and speculate on which portion of the record a party relies; indeed, the Court is not obligated to wade through and search the entire record for some specific facts that might support a party's claims.").

[5] Plaintiff cites to this record as evidence of her syncopal episodes as well as evidence that she "suffers from migraines, two per week, lasting as long as 3-4 days at a time[.]" (ECF No. 8 at 4 (citing "*PageID No. 424*").) However, this record contains no reference to migraines. (R. at 379 (which is also coded "PageID No. 424").) Upon further review of the record, the

### 5.      William W. Chang, M.D.

In June 2016, William W. Chang, M.D. completed a physical capacity evaluation of Plaintiff.  (R. at 118–19.)  Dr. Chang noted that Plaintiff could stand for two hours total and ten to fifteen minutes at one time; could walk for two hours total and for ten minutes at one time; and could sit for two hours total and for ten to fifteen minutes at one time.  (R. at 118.)  Dr. Chang opined that Plaintiff could not lift any weight and that she could not bend, squat, crawl, or climb ladders.  (R. at 119.)  Dr. Chang noted that Plaintiff used a cane most of the time and indicated that her condition would likely deteriorate if placed under stress.  (*Id.*)

### B.      Mental Impairments

### 1.      Ohio Psychiatric Associates, Inc. and Avneet Hira, M.D.

Plaintiff was admitted to the hospital in June 2012 for suicidal ideation.  (R. at 434.)

On December 24, 2013, Plaintiff presented to Avneet Hira, M.D., a psychiatrist, for medication management.  (R. at 818–19.)[6]  Dr. Hira noted that Plaintiff reported experiencing more panic attacks in the last three to four weeks but that she denied any specific stress.  (R. at 818.)  Dr. Hira also noted that Plaintiff reported that that "[d]epression is doing ok overall[,]" that her motivation and energy are low with some irritability.  (*Id.*)  She reported no manic symptoms.  (*Id.*)  Upon mental status examination, Dr. Hira noted Plaintiff was cooperative and spontaneous with good eye contact and was alert and oriented to time, place, and person.  (*Id.*)

---

undersigned notes that the bates-stamped number 424 at the lower right corner of the page (which is also coded as PageID No. 469) likewise does not refer to migraines.  (R. at 424.)

[6] Plaintiff refers to an examination by Dr. Hira in December 2013, but again omitted the citation to the record.  (*See* ECF No. 8 at 5 (citing "PageID No. [left blank by Plaintiff]").)  Although the Court has no obligation to wade through the record and speculate as to which part of the record upon which Plaintiff relies, *see*, *e.g.*, *Przytulski*, 2012 WL 2025299, at *6, the undersigned presumes that Plaintiff relies upon the examination by Dr. Hira on December 24, 2013.

Dr. Hira further noted that Plaintiff's affect was restricted but she exhibited no agitation and he noted no abnormal movements.  (*Id*.)  Plaintiff denied suicidal or homicidal thoughts and denied delusions, ideas of reference, and any auditory, visual, tactile, or olfactory hallucinations.  (*Id*.)  Dr. Hira noted that Plaintiff's thought process was goal directed with no loosening of association and that her attention, concentration, and memory were intact.  (*Id*.)  Dr. Hira assessed her insight and judgment as fair.  (*Id*.)  Dr. Hira also assessed Plaintiff with a Global Assessment of Functioning ("GAF") of 55.  (R. at 819.)  Dr. Hira concluded that Plaintiff should continue taking Luvox, Cymbalta, and Klonopin; that she increase her prescription for Trilafon; that she change to Ambien; continue therapy and return in three months "per pt choice."  (*Id*.)

On January 20, 2015, Plaintiff presented to Dr. Hira with complaints of depression.  (R. at 807–09.)  Dr. Hira noted that Plaintiff was to come back after one month but that he was seeing her after three months.  (R. at 807.)  He noted that Plaintiff reported that she has been shaking since an increase in her Trilafon and is still depressed and has high anxiety.  (*Id*.)  Plaintiff also reported low motivation and energy, some panic attacks, but no manic symptoms.  (*Id*.)  Dr. Hira noted that Plaintiff reported no adverse effects from medication and that her sleep is good.  (*Id*.)  Upon mental status examination, Dr. Hira noted that Plaintiff was cooperative and spontaneous with good eye contact and was alert and oriented to time, place, and person.  (R. at 808.)  Dr. Hira further noted that Plaintiff's affect was restricted and her mood depressed but she exhibited no agitation and he noted no abnormal movements.  (*Id*.)  Plaintiff denied suicidal or homicidal thoughts and denied delusions, ideas of reference, and any auditory, visual, tactile, or olfactory hallucinations.  (*Id*.)  Dr. Hira noted that Plaintiff's thought process was goal directed with no loosening of association and that her attention, concentration, and memory were intact.  (*Id*.)  Dr. Hira assessed Plaintiff's insight and judgment as fair.  (*Id*.)  Dr. Hira again assessed

Plaintiff with a GAF of 55. (*Id*.) Dr. Hira concluded that Plaintiff should continue taking Luvox, Cymbalta, Klonopin, and Ambien; that she decrease her prescription for Trilafon; that she continue taking Ambien; continue in therapy and return in in one month. (*Id*.)

## C. State agency review

### 1. Physical RFC

Anne Prosperi, D.O., reviewed Plaintiff's medical record on March 29, 2014. (R. at 180–82.) She found Plaintiff to be partially credible, noting that the medical evidence did not support standing or walking limitations. (R. at 180.) Dr. Prosperi determined Plaintiff was capable of occasionally lifting and/or carrying up to twenty pounds and frequently lifting and/or carrying up to ten pounds; able to stand and/or walk and sitting for about six hours in an eight-hour work day; able to sit for about six hours in an eight-hour work day; and had no push and/or pull limitations. (R. at 181.) Dr. Prosperi noted that Plaintiff was capable of frequently stooping, kneeling, crouching, and crawling. (*Id*.) It was noted that this RFC was an adoption of the RFC dated August 28, 2012, pursuant to "AR 98-4 (Drummond Ruling.)[.]" (R. at 181–82.)

Stephen Sutherland, M.D., reviewed Plaintiff's medical record upon reconsideration on August 13, 2014. (R. at 195–97.) Dr. Sutherland agreed with Dr. Prosperi's physical RFC assessment with the following additional postural limitations: Plaintiff was capable of occasionally climbing ladders/ropes/scaffold. (R. at 195.) He found she was not limited in balancing. (*Id*.) Dr. Sutherland also determined that Plaintiff had no environmental limitations except that she should avoid concentrated exposure to hazards (machinery, heights, etc.). (R. at 196.)

### 2. Mental RFC

On April 1, 2014, Aracelis Rivera, Psy.D., reviewed Plaintiff's record and assessed her mental condition. (R. at 182.) Dr. Rivera noted that the mental RFC "is an adoption of the ALJ PRTF/MRFC dated 8/28/12" and "is being adopted under AR Ruling 98-4 (Drummond Ruling.)[.]" (R. at 182.)

Paul Tangeman, Ph.D., reviewed Plaintiff's medical record upon reconsideration on August 21, 2014. (R. at 196–97.) Dr. Tangeman, like Dr. Rivera, concluded that there should be no changes to Plaintiff's prior mental limitations, adopting the "ALJ PRTF/MRFC dated 8/28/12" in accordance with *Drummond*. (R. at 197.)

## IV.     ADMINISTRATIVE DECISIONS

### A.     First Administrative Decision Dated August 28, 2012

On August 28, 2012, ALJ Foley issued his decision. (R. at 157–69.) At step one of the sequential process,[7] ALJ Foley found that Plaintiff met the insured status requirements through December 31, 2013, and that she had not engaged in substantial gainful activity since her alleged onset date of June 30, 2008. (R. at 159.)

---

[7] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.     Is the claimant engaged in substantial gainful activity?
2.     Does the claimant suffer from one or more severe impairments?
3.     Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.     Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.     Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

At step two, ALJ Foley determined that Plaintiff had the following severe impairments: fibromyalgia; obesity; degenerative joint disease of the spine and multiple joints; degenerative disc disease of the lumbar spine; migraine headaches; sleep apnea; a depressive disorder; and an anxiety disorder.  (*Id*.)

ALJ Foley next found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 162–64.)

At step four of the sequential process, ALJ Foley set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: she is limited to frequent (defined as 1/3to 2/3 of a workday) stooping, kneeling, crouching, and crawling; can understand, remember, and follow instructions involving content that is basic and straightforward or moderately complex, but she can only sustain routine and repetitive tasks consisting of one to two step instructions; no contact with the public or in crowded co-worker conditions; and no fast-paced or high production requirements.

(R. at 164.)

ALJ Foley concluded that Plaintiff was incapable of performing his past relevant work. (R. at 167.)  However, ALJ Foley went on to find that Plaintiff was capable of performing other jobs existing in significant numbers in the national economy.  (R. at 168–69.)  He therefore concluded that Plaintiff was not disabled under the Social Security Act.  (R. at 169.)

**B.      Second Administrative Decision Dated May 10, 2016**

On May 10, 2016, ALJ Earnhart issued his decision.  (R. at 204–20.)  ALJ Earnhart first noted that "[b]ecause there is sufficient new evidence of impairments not adjudicated at the prior Administrative Law Judge decision of August 28, 2012 (Exhibit B-1A), and imposing more significant functional limitations than were present at that time, those findings are not adopted as

a *Drummond* [*v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)] precedent." (R. at 204; *see id.* at n.1 (stating that where a claim arises under the same title of the Social Security Act as a prior claim on which there has been a final decision by an ALJ or the Appeals Council, the Social Security Administration "must adopt a finding of a claimant's residual functional capacity, a finding of the demands of a claimant's past relevant work, or other finding required under the applicable sequential evaluation process for determining disability, made in the final decision" by the ALJ or the Appeals Council on the prior disability claim) (citing *Dennard v. Comm'r of Soc. Sec.*, 907 F.2d 598 (6th Cir. 1990); *Drummond*, 126 F.3d 837).)

At step one of the sequential evaluation process, ALJ Earnhart found that Plaintiff met the insured status requirements through June 30, 2014, and that she had not engaged in substantial gainful activity since his alleged onset date of August 29, 2012, through her date last insured of June 30, 2014. (R. at 206.)

At step two, ALJ Earnhart determined that Plaintiff had the following severe impairments: fibromyalgia; obesity; degenerative joint disease of multiple joints; degenerative disc disease of the lumbar spine with a history of laminectomy and radiculopathy; migraine headaches; chronic obstructive pulmonary disease; syncope; sleep apnea; a depressive disorder; and an anxiety disorder. (R. at 207.)

ALJ Earnhart next found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14–17.) In so concluding, the ALJ noted, *inter alia*, as follows:

> Although there is no listing specifically for fibromyalgia, SSR 12-2p notes that fibromyalgia can be identified as a medically determinable impairment if the medical evidence shows:

1.  A history of widespread pain (see section II.A. I.);

2.  Either at least 11 positive tender points on physical examination (see diagram below). The positive tender points must be found bilaterally (on the left and right sides of the body) and both above and below the waist, or repeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ("fibro fog"), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

3.  Evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded (see section II.A.3.). While there is no listing specific to fibromyalgia, this is a musculoskeletal impairment and is best evaluated using Listing 1.00 et seq. However, there is no evidence to demonstrate that the claimant's fibromyalgia approaches the severity of any impairment described in that, or any other, Listing. In particular, her fibromyalgia has not resulted in an inability to ambulate effectively or an inability to perform fine and gross movements effectively.

(R. at 209.)

At step four of the sequential process, ALJ Earnhart set forth Plaintiff's RFC as follows:

After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could stand and/or walk for up to four hours in an eight hour workday. The claimant could frequently operate foot controls, and frequently tolerate exposure to extremes of temperature, humidity, atmospheric conditions, and pulmonary irritants. She is limited to occasional stooping, kneeling, crouching, crawling and climbing of ramps or stairs; she could occasionally push, pull, and reach overhead with both upper extremities; she should not climb ladders, ropes, or scaffolds, or be exposed to workplace hazards such as dangerous machinery or unprotected heights. The claimant could understand, remember, and follow instructions for simple routine and repetitive tasks consisting of one to two step instructions. She should have no contact with the public or in crowded co-worker conditions; no more than occasional changes in the work setting; and, no fast-paced or high production requirements.

(R. at 211–12.)

In reaching this determination, ALJ Earnhart stated, *inter alia*, as follows:

The physical residual functional capacity set forth above generally gives great weight to the opinion of the BDD medical experts, except that slightly more conservative exertional, postural, and upper extremity restrictions have been adopted to accommodate the claimant's reported symptoms associated with her back surgery, neck pain, and fibromyalgia.

14

(R. at 217.)

ALJ Earnhart further stated that

> [b]ecause of her mental impairments and reports of irritability and panic attacks associated with crowds and strangers, the claimant is limited to the performance of simple, routine, repetitive tasks with no more than occasional changes in the work setting, common the fast pace or high production requirements, no contact with the general public, and no work in crowded coworker conditions.

(R. at 218.)

ALJ Earnhart went on to state that "[c]onsidering the medical evidence and opinions discussed above, as well as the claimant's activities, I find that the claimant's subjective complaints and alleged limitations are consistent with the objective evidence of record, although she retains the capacity to perform work activities with the limitations set forth above." (*Id*.)

ALJ Earnhart concluded that Plaintiff was unable to perform her past relevant work. (*Id*.) However, ALJ Earnhart went on to find that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy. (R. at 219–20.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 220.)

**C.      Appeals Council Decision Dated December 12, 2017**

On December 12, 2017, the Appeals Council issued its decision reviewing ALJ Earnhart's decision. (R. at 1–8.) The Appeals Council first noted as follows:

> In additional [sic] to the [claimant's] statement, the claimant submitted medical records from Allwell Behavioral Health Services, dated December 9, 2016 through August 18, 2017. The Administrative Law Judge decided the case through June 30, 2014, but should have adjudicated the case through June 30, 2015 (see below). This additional evidence does not relate to the period at issue. Therefore, the Appeals Council finds it does not affect the decision about whether the claimant was disabled on or before June 30, 2015.

(R. at 4.) The Appeals Council went on to consider evidence post-dating ALJ Earnhart's incorrect date last insured, discussing evidence dated July 2014 through June 16, 2015. (R. at 5–

6.)  The Appeals Council found that this evidence supported ALJ Earnhart's RFC assessment and that "[n]ew and material evidence supports [his] residual functional capacity finding being more restrictive than that of" ALJ Foley's finding.  (R. at 6.)

The Appeals Council agreed that Plaintiff was unable to perform her past relevant work and further agreed that Plaintiff is capable of performing other jobs existing in significant numbers in the national economy.  (R. at 6–7.)  The Appeals Council therefore concluded that Plaintiff was not disabled at any time from August 29, 2012, through June 30, 2015, the date last insured.  (R. at 7.)

## V.   STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial.  The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is

substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## VI.   ANALYSIS

Plaintiff advances four contentions of error.  First, Plaintiff argues that ALJ Earnhart erred when he failed to evaluate all the medical opinions of record.  (ECF No. 8 at 6–8.)  Plaintiff next contends that ALJ Earnhart erred in his analysis of Plaintiff's fibromyalgia pursuant to Social Security Ruling ("SSR") 12-2p.  (*Id.* at 8–12.)  Plaintiff also argues that ALJ Earnhart relied on an incorrect date last insured and, therefore, substantial evidence does not support the RFC.  (*Id.* at 12–15.)[8]  Finally, Plaintiff contends that ALJ Earnhart's decision should be reversed and remanded because the Appeals Council failed to consider all the relevant evidence. (*Id.* at 15–16.)  The Court will address these contentions in turn.

### A.   Evaluation of Medical Opinions of Record

Plaintiff argues that the ALJ erred when he failed to evaluate all the medical opinions of record, specifically, the opinions of the state agency psychologists regarding Plaintiff's mental impairments.  (ECF No. 8 at 6–8.)

---

[8] The heading for this contention of error refers to ALJ Earnhart relying on an incorrect alleged onset date (*see id.* at 12) but Plaintiff goes on to argue substantively in the body of the Statement of Errors that ALJ Earnhart's decision was based on an incorrect date last insured. (*Id.* at 12–14.)

The ALJ must consider all medical opinions that he or she receives in evaluating a claimant's case. 20 C.F.R. § 416.927(c); see SSR 96–8p 1996 WL 374184, at *7 (July 2, 1996) ("The RFC assessment must always consider and address medical source opinions."). The applicable regulations define medical opinions as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2).

Regardless of the source of a medical opinion, in weighing the opinion, the ALJ must apply the factors set forth in 20 C.F.R. § 416.927(c), including the examining and treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the source. In addition, the regulations provide that where, as here, the ALJ does not assign controlling weight to the claimant's treating physician, he or she must explain the weight assigned to the opinions of the medical sources:

> Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. § 416.927(e)(2)(ii). Where an ALJ's opinion satisfies the goal of § 416.927 and is otherwise supported by substantial evidence, the failure to explicitly provide the weight assigned is harmless. *See, e.g.*, *Pasco v. Comm'r of Soc. Sec.*, 137 F. App'x 828, 839 (6th Cir. 2005) (harmless error where the ALJ failed to mention or weigh the report of consultative neurologist who only evaluated plaintiff once and was not a treating source); *Dykes v. Barnhart*, 112 F. App'x 463, 467–69 (6th Cir. 2004) (failure to discuss or weigh opinion of consultative examiner was harmless error); *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010)

(explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Here, Plaintiff contends that "[t]he State agency psychologists opined that the prior ALJ's RFC [ALJ Foley's RFC articulated in his decision dated August 28, 2012] should be adopted." (ECF No. 8 at 7.)[9] As set forth above, ALJ Foley articulated the following RFC in his decision dated August 28, 2012:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: she is limited to frequent (defined as 1/3to 2/3 of a workday) stooping, kneeling, crouching, and crawling; can understand, remember, and follow instructions involving content that is basic and straightforward or moderately complex, but she can only sustain routine and repetitive tasks consisting of one to two step instructions; no contact with the public or in crowded co-worker conditions; and no fast-paced or high production requirements.

(R. at 164.)

The RFC set forth by ALJ Earnhart in his decision dated May 10, 2016, is as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she could stand and/or walk for up to four hours in an eight hour workday. The claimant could frequently operate foot controls, and frequently tolerate exposure to extremes of temperature, humidity, atmospheric conditions, and pulmonary irritants. She is limited to occasional stooping, kneeling, crouching, crawling and climbing of ramps or stairs; she could occasionally push, pull, and reach overhead with both upper extremities; she should not climb ladders, ropes, or scaffolds, or be exposed to workplace hazards such as dangerous machinery or unprotected heights. The claimant could understand, remember, and follow instructions for simple routine and repetitive tasks consisting of one to two step instructions. She should have no contact with the public or in crowded co-worker conditions; no more than occasional changes in the work setting; and, no fast-paced or high production requirements.

---

[9] Plaintiff provides no citation to the record for these state agency psychologists' opinions. (*See id.*)

(R. at 211–12.)

The United States Court of Appeals for the Sixth Circuit previously held that principles of res judicata apply to both claimants and the Commissioner in Social Security cases. *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 841–42 (6th Cir. 1997). The *Drummond* Court specifically held that absent evidence of "changed circumstances" relating to a claimant's condition, "a subsequent ALJ is bound by the findings of a previous ALJ." *Id*. at 842. Applying this approach, the *Drummond* Court concluded that an ALJ was bound by a previous ALJ's determination that the claimant retained the RFC to perform sedentary work because evidence did not indicate that the claimant's condition had improved. *Id.* at 843.

Following *Drummond*, the Social Security Administration issued AR 98-4(6), which provides, in pertinent part, as follows:

> [W]hen adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or rulings affecting the finding or the method for arriving at the finding.

AR 98-4(6), 1998 WL 283902, at *3 (June 1, 1998); *see also Blankenship v. Comm'r of Soc. Sec.*, 624 F. App'x 419, 425 (6th Cir. 2015) ("Read together, *Drummond* and Acquiescence Ruling 98-4(6) clearly establish that a subsequent ALJ is bound by the legal and factual findings of a prior ALJ unless the claimant presents new and material evidence that there has been either a change in the law or a change in the claimant's condition.").

Thereafter, the Sixth Circuit clarified its decision in *Drummond*. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). The Sixth Circuit explained that principles of "consistency between proceedings and finality with respect to resolved applications" protected

by *Drummond* "do not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings."  *Id*. at 931.  The Court went on to specifically reject the Social Security Administration's argument that "[i]n reviewing a second application by the same individual, . . . the administrative law judge should completely ignore earlier findings and applications" because "[f]resh review is not blind review."  *Id*. at 934.  In short, the Sixth Circuit therefore found that "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application" and that a "ALJ should have another opportunity to review the application under the correct standard."  *Id*. at 933–34.

In this case, ALJ Earnhart explained that "[b]ecause there is sufficient new evidence of impairments not adjudicated at the prior Administrative Law Judge decision of August 28, 2012 (Exhibit B-1A), and imposing more significant functional limitations than were present at that time, those findings are not adopted as a *Drummond* [*v. Comm'r of Soc. Sec.*, 126 F.3d 837 (6th Cir. 1997)] precedent."  (R. at 204; *see id.* at n.1.)  While ALJ Earnhart's decision was issued before *Earley* was decided, he nevertheless performed a "fresh review" of the new evidence and was not bound ALJ Foley's decision where there is new and material evidence.  (R. at 204, 211–18; *see also Earley*, 893 F.3d at 934; *Blankenship*, 624 F. App'x at 425.)  Under these circumstances, the Court must review ALJ Earnhart's decision to determine if substantial evidence supports that decision.  *Cf. Johnson v. Comm'r of Soc. Sec.*, No. 2:17-cv-13126, 2018 WL 6440897, at *15 (E.D. Mich. Oct. 22, 2018) ("Courts applying *Earley* to ALJ decisions issued before that case have asked whether the ALJ, despite purporting to follow *Drummond*,

gave the new evidence a fresh look. If so, then the ALJ's decision satisfied *Earley*; if not, then remand was appropriate."), *adopted by*, 2018 WL 6434778 (E.D. Mich. Dec. 7, 2018) (collecting cases); *see also Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009) (explaining that a plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments.").

Here, Plaintiff acknowledges that the psychological limitations set forth in ALJ Earnhart's RFC "are slightly different and more restrictive[.]" (ECF No. 8 at 7.) However, Plaintiff goes on to argue that ALJ Earnhart "impermissibly 'played doctor' by substituting h[is] own opinion" because there was no discussion of the state agency psychologists' opinions and there is no other medical source opinion in the record. (*Id*. at 7–8 (citations omitted).) Plaintiff's argument is not well taken. "The burden of showing harmfulness is normally on the party attacking an agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted). In *Shinseki*, the United States Supreme Court, noting congressional intent that reviewing courts not become "impregnable citadels of technicality," again "warned against courts' determining whether an error is harmless through the use of mandatory presumptions and rigid rules rather than case-specific application of judgment, based upon examination of the record." *Id*. at 407–08 (internal citations omitted). Here, as Plaintiff concedes, ALJ Earnhart's RFC is "more restrictive" than ALJ Foley's earlier RFC. (*Id*. at 8; *see also* R. 164, 211–12.) Moreover, Plaintiff does not contend that ALJ Foley's more restrictive RFC fails to accommodate any mental impairment or that the RFC should be even more restrictive to accommodate a mental impairment. (ECF No. 8 at 6–8.) Accordingly, remanding on this basis would serve no purpose. Based on this record, ALJ Earnhart's failure to specifically address the state agency psychologists' opinions constitutes, at most, harmless error. *See Ferris v. Comm'r*

*of Soc. Sec.*, No. 5:16-cv-2459, 2017 WL 5187796, at *11 n.4 (N.D. Ohio Nov. 9, 2017) ("Because his RFC determination was more restrictive than the opinions expressed by non-examining state agency physicians, the ALJ's departure from their opinions was, at most, harmless error.") (citing *Shinseki*, 556 U.S. at 409); *Malone v. Comm'r of Soc. Sec.*, No. 1:16-cv-1084, 2017 WL 9485649, at *14 (N.D. Ohio May 4, 2017) ("Because the ALJ found that plaintiff's RFC was more restricted than had the state-agency reviewing physicians, his assignment of no weight to their opinions was harmless."), *adopted by* 2017 WL 2821449 (N.D. Ohio June 30, 2017); *Hudson v. Comm'r of Soc. Sec.*, No. 16-10032, 2017 WL 1030216, at *5 (E.D. Mich. Feb. 22, 2017) ("Thus, even if the ALJ had erred by not tethering his RFC findings to a particular medical opinion, remand would serve no purpose because plaintiff cannot point to any competent evidence that a more-restrictive RFC was warranted."), *adopted by* 2017 WL 1021072 (E.D. Mich. Mar. 16, 2017); *cf. Washington v. Comm'r of Soc. Sec.*, No. 3:13-cv-785, 2017 WL 975349, at *11 (M.D. Tenn. Mar. 14, 2017) ("Where an ALJ in a subsequent decision renders an RFC finding that is more restrictive than the ALJ in a prior decision, the claimant has no cause for remand even if the subsequent ALJ failed to properly apply the preclusive effect of the earlier decision, because any error works to the claimant's benefit."). It is therefore **RECOMMENDED** that the Plaintiff's first contention of error be **OVERRULED**.

**B.     Fibromyalgia analysis**

In her second contention of error, Plaintiff contends that the ALJ erred in his analysis of her fibromyalgia as required by SSR 12-2p by failing to conduct a proper evaluation of her impairment at step three and when assessing her RFC. (ECF No. 8 at 8–12.) Specifically, Plaintiff argues that ALJ Earnhart erred at step three of the sequential analysis by not relying on substantial evidence in the record and by failing to look to "Section 14.00 to determine if the

Plaintiff's fibromyalgia medically equaled listing 14.09D (the listing for inflammatory arthritis)."
(*Id*. at 9–12.)  Plaintiff also argues that ALJ Earnhart failed to include accommodations in the
RFC for Plaintiff's chronic pain and resulting inability to perform substantial gainful activity on
a sustained basis without additional absences and time off task.  (*Id*. at 9–10.)  The undersigned
addresses these arguments in turn.

> **1.      Step three analysis**

Fibromyalgia "is a complex medical condition characterized primarily by widespread
pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3
months."  SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012).  SSR 12-2p "provides guidance
on how we develop evidence to establish that a person has a medically determinable impairment
of fibromyalgia, and how we evaluate fibromyalgia in disability claims . . . . "  *Id*. at *1.  A
claimant has fibromyalgia if: (1) there exists a history of widespread pain (in all quadrants of the
body) that has persisted for at least three months (the pain "may fluctuate in intensity and may
not always be present"); (2) at least eleven of eighteen possible positive tender points are found
on physical examination; and (3) evidence exists "that other disorders that could cause the
symptoms or signs were excluded" as the possible source of pain.  *Id*. at *2–3.  While a licensed
physician is the only acceptable medical source who can provide evidence of fibromyalgia, "[w]e
cannot rely upon the physician's diagnosis alone."  *Id*. at *2.  Fibromyalgia "should be analyzed
under the traditional five-step evaluation process used for analyzing other claims for SSI."
*Luukkonen v. Comm'r of Soc. Sec*., 653 F. App'x 393, 399 (6th Cir. 2016) (citing SSR 12-2p).
SSR 12-2p instructs that fibromyalgia is not a listed impairment and, therefore, at step three "we
determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the

listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment."  SSR 12-2p, 2012 WL 3104869, at *6.

Here, ALJ Earnhart found that Plaintiff's fibromyalgia, *inter alia*, was a severe impairment but that it did not meet or medically equal any listed impairments.  (R. at 14–17.)  As set forth above, ALJ Earnhart specifically considered Plaintiff's fibromyalgia as follows:

> While there is no listing specific to fibromyalgia, this is a musculoskeletal impairment and is best evaluated using Listing 1.00 et seq.  However, there is no evidence to demonstrate that the claimant's fibromyalgia approaches the severity of any impairment described in that, or any other, Listing.  In particular, her fibromyalgia has not resulted in an inability to ambulate effectively or an inability to perform fine and gross movements effectively.

(R. at 209.)

Plaintiff complains that this analysis is deficient, arguing that ALJ Earnhart "should have reviewed the record to determine whether the severe impairment met or equaled a listed impairment" instead of "merely restating the criteria for determining whether" Plaintiff's fibromyalgia was a medically determinable impairment and focused only briefly on the Listings in Section 1.00.  (ECF No. 8 at 9–11.)  However, the United States Court of Appeals for the Sixth Circuit has declined to require more than "minimal reasoning at step three."  *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 365 (6th Cir. 2014).  Furthermore, at step three, the regulations require only that the ALJ consider "the medical severity of your impairment(s)," rather than the stricter "good reasons" requirement that governs evaluation of treating source opinions.  *Id.*; *see* § 404.1520(a)(4)(iii).  Here, ALJ Earnhart directly addressed the severity issue by considering Plaintiff's ability to ambulate effectively and her ability to perform fine and gross movements effectively.  (R. at 209.)  Plaintiff also asserts that her migraines and headaches were symptoms, signs, or co-concurring conditions of her fibromyalgia (ECF No. 8 at 9), which ALJ

Earnhart also examined at length. (R. at 209–10.) Additionally, at step four, ALJ Earnhart discussed the medical records and testimony that support his severity analysis. (R. at 212–18.)

Plaintiff nevertheless insists that the "record is replete with evidence that satisfies the requirements of 12-2p[,]" such as a sleep disorder; co-occurring conditions of depression and anxiety; muscle weakness/cramps; headaches/migraines; dizziness; balance and syncope; tender points throughout the body; GERD, dyspnea; COPD; and symptoms of memory loss and lack of concentration. (ECF No. 8 at 9 (citing dozens of pages in the record).) While many of these records support a diagnosis of fibromyalgia, which ALJ Earnhart credited as a severe impairment, they do not undermine his severity analysis at step three. For example, although multiple records relate to Plaintiff's migraines, those records also reveal that Plaintiff had a steady or normal gait (R. at 408, 412, 414, 436–37, 503, 802, 808, 811, 814)[10] and reflect no complaints of neck, back, or joint pain or musculoskeletal pain or tenderness (R. at 442, 449, 462, 465, 474, 486). Plaintiff cites to symptoms of memory loss as support of the severity of her fibromyalgia but many of the cited records (or pages from the same visit not specifically cited by Plaintiff) reflect an intact or normal memory. (R. at 457, 503, 536, 802, 808, 811.) Plaintiff's cited records also reveal that her migraines improved with treatment. (R. at 450 ("She has good resolution of her symptoms here"), 466 ("feeling much better"), 470 ("In the past, she has done well with a combination of Reglan, Toradol and Benadryl" and, upon given this medication, Plaintiff reported "her headache is down to a 5" and "states she is ready to go home"), 487 (headache resolved after receiving Dilaudid), 503 ("achieved a significant relief for her migraine" upon receipt of medication).) Moreover, as discussed above, ALJ Earnhart separately

---

[10] Plaintiff cites to the "PageID No." located at the upper hand corner of each page of the record. In keeping with the citations throughout this decision, however, the undersigned cites to the Bates-stamped number appearing in the lower right-hand corner of each page.

considered Plaintiff's migraines, which enjoys substantial support in the record. (*Id.*; R. at 209–10.) Notably, "a diagnosis of fibromyalgia does not equate to a finding of disability or an entitlement to benefits." *Stankoski v. Astrue*, 532 F. App'x 614, 619 (6th Cir. 2013) (citing *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008)); *see also Kutscher v. Comm'r of Soc. Sec.*, No. 1:13CV1389, 2014 WL 3895220, at *13 (N.D. Ohio Aug. 8, 2014) ("However, the mere diagnosis of an impairment says nothing about the severity of that impairment.") (citing *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988)). In short, evidence that Plaintiff had fibromyalgia does not establish that this condition met or medically equaled a listed impairment at step three. *See Thacker v. Social Sec. Admin.*, 93 F. App'x 725, 727–28 (6th Cir. 2004) ("At step three of the evaluation process, it is the burden of the claimant to show that he meets or equals the listed impairment."); *cf. Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (2009) ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Plaintiff, however, goes on to argue that ALJ Earnhart's analysis at step three is not supported by substantial evidence due to his failure to look to "Section 14.00 to determine if the Plaintiff's fibromyalgia medically equaled listing 14.09D (the listing for inflammatory arthritis)." (ECF No. 8 at 10.) Plaintiff must prove the following to satisfy Listing 14.09(D), Inflammatory Arthritis:

> Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
> 1. Limitation of activities of daily living.
>
> 2. Limitation in maintaining social functioning.

> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.09(D).

As a preliminary matter, "even where a claimant suffers from fibromyalgia, an ALJ is not required to consider Listing 14.09(D)." *Boersma v. Comm'r of Soc. Sec.*, No. 2:17-cv-724, 2018 WL 1187805, at *6 (S.D. Ohio Mar. 7, 2018) (collecting cases), *adopted by* 2018 WL 1935509 (S.D. Ohio Apr. 24, 2018). Moreover, Plaintiff has not argued that the evidence proves that she suffers from at least two "constitutional symptoms" and a marked level of limitations of activities of daily living, in maintaining social functioning, or in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace. (*See generally* ECF No. 8; *see also Colon-Lockhart v. Comm'r of Soc. Sec.*, No. 14-14336, 2015 WL 10553206, at *6 (E.D. Mich. Dec. 29, 2015) (identifying the threshold requirements of Listing 14.09).) Notably, ALJ Earnhart found only a mild limitation in daily living and moderate limitations in social functioning and in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace (*see* R. at 210), which Plaintiff did not challenge. (*See generally* ECF No. 8.) Plaintiff's undeveloped argument therefore does not establish that she meets the symptoms necessary for a finding of equaling Listing 14.09(D). *See Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) ("It is well-established that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.") (internal quotation marks and citations omitted)) *abrogated on other grounds as recognized by Anderson v. City of Blue Ash*, 798 F.3d 338, 357 n.1 (6th Cir. 2015). Finally, for the reasons previously discussed, the undersigned concludes that ALJ Earnhart properly considered the severity of Plaintiff's fibromyalgia at step three and that substantial evidence supports his analysis. *See id.*; *Blakley*, 581 F.3d at 406; *Forrest*, 591 F. App'x at 365.

**2.      RFC**

Plaintiff also argues that ALJ Earnhart failed to include accommodations in the RFC for

Plaintiff's chronic pain and resulting inability to perform substantial gainful activity on a

sustained basis without additional absences and time off task.  (ECF No. 8 at 9–10.)  As with her

argument under Listing 14.09(D), however, Plaintiff simply asserts this argument in perfunctory

manner and does not develop her position with evidence of the record.  *See Dillery*, 398 F.3d at

569.  Plaintiff does not cite to any medical source opinion identifying any functional restrictions

stemming from her fibromyalgia or any additional evidence supporting her statements regarding

the debilitating effects of her fibromyalgia.  *See* 20 C.F.R. § 416.945(a)(3) (stating that a

claimant is "responsible for providing the evidence" used to determine the RFC).  Even if she

had developed this argument, the undersigned notes that ALJ Earnhart found that Plaintiff's

statements regarding the intensity, persistence and limiting effects of her symptoms were not

entirely consistent with the medical evidence and other evidence in the record.  (R. at 213–14.)

Plaintiff does not challenge this credibility determination (*see generally* ECF No. 8), which

enjoys substantial support in the record.  (R. at 214–18.)

For all of these reasons, it is **RECOMMENDED** that the Plaintiff's second contention of

error be **OVERRULED**.

**C.      Incorrect date last insured and records of William W. Chang, M.D.**[11]

Plaintiff also argues that ALJ Earnhart relied on an incorrect date last insured and,

therefore, substantial evidence does not support the RFC.  (ECF No. 8 at 12–15.)  Specifically,

Plaintiff argues that ALJ Earnhart's decision was based on a date last insured of June 30, 2014,

---

[11] As Plaintiff's third and fourth contentions of error address the records of Dr. Chang, the
Court addresses the contentions together.

instead of the correct date of June 30 2015, leaving an unadjudicated period. (*Id.*)

A claimant must be "insured for disability insurance benefits" to be eligible for disability insurance benefits. 42 U.S.C. §§ 423(a)(1)(A), 423(c)(1); *see also* 20 C.F.R. § 404.315(a); *McAfee v. Comm'r of Soc. Sec.*, No. 1:16-cv-1417, 2018 WL 1516846, at *4 (W.D. Mich. Mar. 28, 2018) ("'[I]nsured status is a requirement for an award of disability insurance benefits.") (quoting *Garner v. Heckler*, 745 F.2d 383, 390 (6th Cir. 1984)). "To have disability insured status," a claimant must be fully insured in that quarter and have at least twenty quarters of coverage in the last forty-quarter period ending with that quarter. 20 C.F.R. § 404.130(b). The expiration of a claimant's insured status is often referred to as the "date last insured."

"Courts have held that the use of an incorrect date last insured may be harmless when the ALJ's denial of disability benefits does not turn on a plaintiff's date last insured, or the plaintiff cannot show prejudice from the use of the incorrect date." *Ferguson v. Comm'r of Soc. Sec.*, No. 3:15 CV 2714, 2017 WL 9473077, at *11 (N.D. Ohio Jan. 25, 2017) (collecting cases), *adopted by* 2017 WL 561834 (N.D. Ohio Feb. 13, 2017). The party attacking the agency's decision has the burden of establishing that the error was harmful. *See Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

In this case, Plaintiff argues that while the Appeals Council reviewed ALJ Earnhart's decision because he evaluated the record with the incorrect date last insured of June 20, 2015, this evaluation does not resolve the error. (ECF No. 8 at 12–13.) Specifically, Plaintiff contends that this evaluation is deficient as it relied on the state agency medical consultants who failed to review the period between June 2014 and June 2015, and there were no other medical opinions

regarding this period of time, in violation of SSR 96-6p.  (*Id*. at 13–14.)[12]  Plaintiff therefore contends that this error is not harmless.  (*Id*.)

Plaintiff's argument is not well taken.  "There is no categorical requirement that the non-treating source's opinion be based on a 'complete' or 'more detailed and comprehensive' case record."  *Helm v. Comm'r of Soc. Sec. Admin*., 405 F. App'x 997, 1002 (6th Cir. 2011) (quoting SSR 96-6p).  Here, the Appeals Council considered records and treatment that occurred after the state agency review.  Specifically, the Appeals Council discussed treatment and test results beginning in July 2014 through June 30, 2015, including lumbar spine imaging, lumbar spine MRI, brain MRI, labs, and treatment records from Dr. Sybert and Robert J. Thompson, M.D.  (R. at 5–6.)  The Appeals Council concluded that this evidence supported the RFC assessment of ALJ Earnhart.  (R. at 6.)  The Appeals Council's thorough review and conclusion are supported by substantial evidence.  *See id*; *see also McGrew v. Comm'r of Soc. Sec*., 343 F. App'x 26, 32 (6th Cir. 2009) ("It is clear from the ALJ's decision, however, that he considered the medical examinations that occurred after [the state agency physician's] assessment . . . and took into account any relevant changes in [claimant's] condition."); *Taylor v. Comm'r of Soc. Sec. Admin*., 2015 WL 4730716, at *12 (N.D. Ohio 2015) ("Given that the ALJ sufficiently considered the

---

[12] While Plaintiff refers to and discusses the state agency opinions, she does not cite to the record where those opinions may be found.  (*See* ECF No. 8 at 6, 8, 13.)  As previously discussed, citing to the record is critical and she again failed in her duty to do so.  *See Stankoski v. Comm'r of Social Sec*., No. 2:11-cv-627, 2012 WL 3780333, at *3 (S.D. Ohio Aug. 31, 2012) ("[I]n the context of Social Security cases, it is a claimant's duty to highlight the portions of the record on which his or her argument is based.") (citations omitted); *Przytulski v. Astrue*, No. 1:11-cv-1518, 2012 WL 2025299, at *6 (N.D. Ohio June 5, 2012) ("The Court will not cull through the record and speculate on which portion of the record a party relies; indeed, the Court is not obligated to wade through and search the entire record for some specific facts that might support a party's claims.").

relevant medical records that post-dated Dr. Congbalay's opinion, the ALJ fulfilled her duties and was entitled to rely on the state agency physician's conclusions.").

Plaintiff nevertheless insists that the Appeals Council's decision is deficient because it failed to consider, or even acknowledge, Dr. Chang's medical source statement dated June 7, 2016. (ECF No. 8 at 14–16.) However, as Plaintiff concedes, this evidence is dated nearly one year after Plaintiff's date last insured of June 30, 2015. (*Id*. at 16; R. at 118–19.) Notably, "[e]vidence of disability obtained after the expiration of insured status is generally of little probative value." *Strong v. Soc. Sec. Admin*., 88 F. App'x 841 (6th Cir. 2004). "Post-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured." *Wirth v. Comm'r of Soc. Sec*., 87 F. App'x 478, 480 (6th Cir. 2003) (citing *King v. Sec'y of Health & Human Servs*., 896 F.2d 204, 205–06 (6th Cir. 1990)). Here, while Plaintiff contends that Dr. Chang's statement relates back to the relevant time period (ECF No. 8 at 16), nothing in that record so indicates. (R. at 118–19.) Because Dr. Chang's statement post-dated Plaintiff's date last insured and did not relate back to the relevant time, the Appeals Council did not err in failing to consider that statement.

Finally, to the extent that Plaintiff contends that the Appeals Council erred in failing to consider evidence from December 9, 2016, through August 18, 2017 (ECF No. 8 at 15–16), that argument is unavailing for the same reasons. This evidence was dated more than a year after Plaintiff's date last insured and she has not shown how it relates back to the relevant period. (*Id*.) Moreover, as previously discussed, ALJ Earnhart and the Appeals Council adopted a RFC that was more restrictive than ALJ Foley's RFC and Plaintiff has not shown how this determination prejudiced her. *Cf. Shinseki*, 556 U.S. at 409–10.

Accordingly, it is **RECOMMENDED** that the Plaintiff's third and fourth contentions of error be **OVERRULED**.


## VII.    CONCLUSION

In sum, from a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

## VIII.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed,

appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation

omitted)).


DATED: February 15, 2019

/s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
CHIEF UNITED STATES MAGISTRATE JUDGE